Opinion issued May 26, 2011

 



In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-09-01074-CR

———————————

Veronica Yvonne
Damon, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On Appeal from the 183 District Court

Harris County, Texas



Trial
Court Case No. 1171538

 



 

MEMORANDUM
OPINION

 

          Veronica
Yvonne Damon appeals her conviction for the offense of intoxication
manslaughter with a deadly weapon.[1]  A jury found her guilty for the intoxication
manslaughter of Doris Kimbro and assessed her punishment at seven years’
confinement.  In five issues, Damon
contends that the evidence is legally and factually insufficient to support her
conviction, the trial court erred by admitting the results of a blood test
showing her blood alcohol concentration, and the trial court erred by refusing
her proposed jury charge on concurrent causation.  We conclude that the evidence is sufficient
to support the conviction.  We further
conclude that the trial court did not err by admitting the blood test results
or by refusing the proposed jury charge. 
We therefore affirm.

Background

          Damon
was in a two-vehicle accident on February 21, 2007 at approximately 5:15
p.m. that resulted in the deaths of Doris Kimbro and Yvette Cutia.  Kimbro and Cutia were passengers in a Pontiac
Sunfire driven by Brittany Jones.  The
three women were driving northbound on Miller Road 2.  Damon was driving westbound on Highway 90.  Damon was speeding and ran a stop sign in her Chevrolet
Tahoe, striking the right side of the Sunfire and killing both Kimbro and Cutia.


          Two witnesses
discovered the accident.  Alicia Trant testified
that she was driving home from work at the time of the accident.  She was driving southbound on Miller 2 (the
direction opposite of Jones).  As Trant
approached the intersection of Miller Road 2 and the feeder road for Highway 90
at approximately 5:15, she reached down for her sunglasses.  She testified that the sun was bright but not
so bright that she could not see.  When
she looked back up, she saw Damon’s Tahoe upside down in the middle of the
road.  Trant got out of her car and spoke
to Damon, who was leaning against her overturned Tahoe.  Trant asked Damon if she was okay, and she
responded, “Yeah. Why?”  Trant thought that
Damon seemed rude.  Trant approached the
Sunfire, which was in a ditch next to the road, to help the occupants.   The passenger in the front was dead and the
passenger in the rear was not moving.  Trant
and the other witness, a gentleman, attempted to calm the driver down and assured
her that help was on the way.  During
this time Damon did not check on, or even ask about, the occupants of the Sunfire.  Trant testified that Damon appeared to be
calm and carefree.  Damon also smelled,
but Trant could not identify the smell.  Trant
also said that when she saw Damon speaking with officers later she was
“somewhat uncooperative.”  Within a few
minutes an ambulance arrived, and shortly thereafter Life Flight arrived. 

          Harris
County Sheriff’s Office Deputy G. Bloomfield arrived at the scene at 5:38 p.m.  By the time Bloomfield arrived at the scene, another
officer and EMS were already on the scene, and he learned that Kimbro and Cutia
were dead. His primary responsibility was to direct the traffic.  He observed Damon standing near her Tahoe
overturned in the intersection and Jones’s Sunfire in the ditch northwest of
the intersection.  Damon told Bloomfield
that she was okay and that another deputy had taken her driver’s license.  While Bloomfield was talking with Damon, he did
not notice any slurred speech, stumbling, or odor of alcohol.  He placed the second witness to the accident,
Jesse Williams, in the back of a patrol car, and left to direct traffic.  

          Harris County
Sheriff’s Office Sergeant S. Cotter arrived at the
scene at approximately 6:00 p.m., while Life Flight was evacuating Jones.  At that time, several other deputies were
already on the scene, including Deputy Anderson. EMS and Life Flight were also
there.  Deputy Anderson informed Cotter
there were two fatalities in the Sunfire. 
He also told her that Damon was still present and had refused medical
care and gave Cotter Damon’s license.  

A few minutes later, Harris County Sheriff’s
Office Deputy P. Lillibridge, who was assigned as the lead investigator,
arrived.  Damon at the time was standing
by a white truck on the scene, a little west of her Tahoe.  After conferring with each other for a few
minutes, Lillibridge and Cotter spoke with Damon.  At the time, Cotter did not notice any odor
of alcohol on Damon.  Cotter testified
that Damon repeatedly insisted that she had not run the stop sign.  Cotter left to interview Trant, leaving
Lillibridge to finish interviewing Damon. 
Cotter took numerous photographs of the accident scene, but testified that
Damon was within her sight at all times. 


          When Lillibridge arrived at the scene, Cotter,
additional Sheriff’s Office deputies, at least two witnesses, and numerous fire
department and EMS personnel were on the scene. 
The Sunfire had been moved from the ditch, but Damon’s Tahoe was still
on its roof.  When a tow truck turned it
upright, a cooler and some water bottles, as well as empty small wine bottles,
fell out.  Lillibridge also found two
wine bottles, one full and one empty, inside the Tahoe.  

          Lillibridge
spoke to Damon to try to determine what had happened.  Damon told Lillibridge that she wasn’t
injured.  At some point before
Lillibridge arrived, EMS personnel had checked on Damon, but she refused
treatment or transport to a hospital. 
Damon told Lillibridge that she had left her house to go to a friend’s
house on Miller Road 3.  Because the
accident occurred on Miller Road 2, Lillibridge asked Damon why she exited for
Miller Road 2.  She said she didn’t
know.  In response to a question of whether
Damon was disoriented, Lillibridge testified, “it seemed like something was
wrong with her,” but she did understand the questions and responded to them
appropriately.  Concerning the collision
itself, Damon told him more than once that she had stopped at the stop sign and
the Sunfire had “come out of nowhere.”  Damon
was aware of the stop sign; she mentioned it before Lillibridge brought it up
to her.  Damon did not slur her speech.  Nor did Lillibridge detect any odor of
alcohol on her or observe any visible signs of impairment.  Lillibridge had no reason to suspect
that Damon was intoxicated.  After
finishing his discussion with Damon, Lillibridge continued with his
investigation, delegated to Cotter the task of obtaining Damon’s formal
statement, and asked Deputy Wilkie and Deputy Capretta to obtain measurements at
the scene.  He testified that he was
within sight of Damon at all times. 
Lillibridge also checked with Damon several times to ensure she was
okay.  

          At
approximately 6:30, over an hour after the accident, Cotter approached Damon to
take her formal statement.  Damon was
still standing by the white truck.  Cotter
noticed a strong odor of alcohol from Damon. 
When Cotter got Damon inside a patrol car, the odor became more
pronounced.  Cotter remarked on the odor
and asked Damon, “How much have you been drinking?”  Damon denied drinking anything.  Cotter explained that there was a strong
breeze that may have prevented her from smelling the odor of alcohol on Damon
when she initially met with her shortly after 6 p.m.  Lillibridge confirmed that it was very windy
that evening.

          Cotter
performed the horizontal gaze nystagmus (HGN) test on Damon and observed four
of six clues that could indicate intoxication. 
As part of the test, Cotter checked to verify that Damon’s eyes tracked
equally and that the pupil sizes were equal. 
If they had not, it would indicate a neurological reason the HGN test
should not be performed, such as Damon having injured her head in the accident.
 According to Cotter’s testimony (which
was disputed), four clues are sufficient to determine that a person is
intoxicated.  Lillibridge repeated the
HGN test on Damon and observed the same four clues.  As part of the test, he also checked to verify
Damon had equal tracking and pupil size. 
With Damon confined in a vehicle, Lillibridge smelled alcohol on her.

          Lillibridge
left to complete the investigation of the accident. Cotter then performed the
“walk and turn” test on Damon.  Cotter explained
that during the walk and turn test, there are two clues of intoxication that
officers look for during the instruction phase and six clues during the walking
phase.  She observed no clues from Damon
during the instruction phase and three clues during the walking phase.  Cotter stated two clues during this test
would indicate the individual is intoxicated. 


Cotter next performed the “one-leg
stand” test, and again the results indicated that Damon was intoxicated.  Cotter explained there were four clues of intoxication
in the one-leg stand test and the presence of two or more clues would indicate
the person was intoxicated. Cotter observed two clues during Damon’s test performance.


          While
Lillibridge and Cotter performed their investigations, other officers were also
on the scene assisting them.  Cotter contacted
Deputy Capretta at 5:55 and asked him to check on Jones’s condition at the
hospital.   After going to the hospital,
he came to the accident scene and assisted Deputy Wilkie in obtaining
measurements of the scene.  Sergeant
Morris arrived at the scene at 6:36, observed multiple emergency vehicles,
ambulances and fire trucks, and obtained a written statement from witness Jesse
Williams.

Cotter placed Damon under
arrest.  While Damon was in the back of the
patrol car, her speech was mumbled and she kept repeating that she “hadn’t been
drinking and she didn’t run the stop sign.” 
Cotter asked Damon if she would be willing to provide a breath test, but
did not provide her with the required warnings concerning the breath test.  Damon indicated she would take the breath
test.  Cotter asked Deputy Maurice
Bucklin to take Damon to the station for the breath test.  Bucklin took Damon into custody at 7:28 and
took her to the station.  

           Bucklin noticed a strong odor of alcohol
coming from the back seat where Damon was seated.  Once at the station, Bucklin read Damon the
statutory warnings required for a breathalyzer and advised her of the
consequences of refusing the breathalyzer. 
Damon refused the test.  As a
consequence, Bucklin took her to a hospital where, at 8:32—over three hours
after the accident—Damon’s blood was drawn. 
The subsequent test results revealed that Damon had a blood alcohol
concentration of 0.10, above the legal limit of 0.08, at the time her blood was
drawn.  Damon’s blood also contained an
anti-depressant, an analgesic, and several central nervous system depressants,
which could have produced an additive effect with the alcohol.  Bucklin also checked Damon’s handbag that she
had when she was taken into custody.  He
found a pill bottle containing a diuretic and an appetite suppressant.

          Once back at
the substation, at 9:45 p.m., over four and a half hours after the accident, Deputy
Todd Morris had Damon perform sobriety tests, which were recorded.  Morris testified that she “did well,” “didn’t
look so bad,” and “appeared normal” to him. 

          At trial, the
State presented evidence obtained from the CDR, or “black box,” of Damon’s
Tahoe, along with other evidence to reconstruct the accident.  Damon was driving approximately 57 miles per
hour, or 12 miles over the posted speed limit. 
Approximately three seconds before the accident, she briefly touched her
brakes, but then released them.  She did
not brake and took no evasive action before striking the Sunfire. Although the
stop signs were partially obscured, both sides of the intersection were marked
with a stop sign.  The stop was also
marked by a stop line painted on the road surface.  Because Damon had a stop sign and Jones did
not, Jones had the right of way.

          The State
also presented evidence from the medical examiner concerning the cause of death
of Kimbro and Cutia.  The force of the
collision crushed the side of the Pontiac inward, intruding 20 inches into the
passenger compartment.  Both Kimbro and
Cutia suffered massive trauma in the collision and died as a result of their
injuries.  In addition, Jones suffered
a broken spine, a severe brain injury, and internal bleeding. 

          In
her defense, Damon elicited testimony on cross-examination that the sun would
have been very low in the western sky at the time of the accident and she was
travelling westward.  In addition, an
earthen berm or embankment obscured the line of sight for northbound vehicles,
such as Jones’s Sunfire.  Based on
Damon’s speed (12 miles over the posted limit) and Jones’s speed (eight miles
over the posted limit), Damon would have approximately a second-and-a-half or,
perhaps a few tenths of a second more, in which to react.

          Damon also
presented testimony from an accident reconstructionist, Ted Marules, Sr.  Marules confirmed that the sun would have been
very low in the sky, causing a glare.  Marules
testified that the sun glare would definitely have an effect on a driver’s
vision, and could keep a driver from seeing a road sign or an oncoming vehicle.
 Marules opined that Damon’s vision had also
been obscured by the embankment on the side of the feeder road, which kept her
from seeing northbound vehicles on Miller Road 2.  Marules testified that the stop sign depicted
in State’s Exhibit 1 would not be recognizable as a stop sign because of the
sun glare and the shape of the sign being obscured by a square sign affixed to
its back.  Based on his experience and
training, Marules believed that the collision was an unavoidable accident. 

          Sylvester
Onwas, a Texas Department of Transportation traffic engineer, identified
changes made by the State after the accident to make the intersection safer.  As a result of a traffic study, the
Department of Transportation installed additional stop signs that made it an
all-way stop, increased the size of the stop signs from 36 to 48 inches, and
placed additional signs that said “Stop Ahead.”

          A toxicologist
also testified that the amounts of medication found in Damon’s blood would have
had no effect with any other substance on her central nervous system. 

          In rebuttal,
the State presented evidence from the Sheriff’s Office accident
reconstructionist.  He testified that studies
have shown that drivers whose BAC was between .09 and .15 had slower responses
and vision problems with sun glare.  He
also stated that he saw no evidence suggesting that Damon’s vision was affected
by sun glare, noting that Damon never mentioned sun glare as a cause of this
accident to any of the officers on the scene.  Even if sun glare were an issue in this case,
he opined that Damon’s intoxication still played a role.  He stated that there were no pre-impact skid
marks from Damon’s vehicle or other evidence suggesting that she made any
effort to avoid the crash.  On
cross-examination, he admitted that he had no personal knowledge of whether
Damon was intoxicated at the time of the accident.




 

Sufficiency of the Evidence

          In
her first and second issues, Damon asserts that the evidence is legally and
factually insufficient to support the jury’s guilty verdict.  

          A person commits the offense of intoxication manslaughter if the
person: (1) operates a motor vehicle in a public place; (2) is intoxicated; and
(3) by reason of that intoxication causes the death of another by accident or
mistake.  See Tex. Penal Code Ann.
§ 49.08 (West Supp. 2010).  To be
intoxicated is to (1) not have the normal use of mental or physical faculties
by reason of the introduction of alcohol, a controlled substance, a narcotic, a
drug, a dangerous drug, a combination of two or more of those substances, or
any other substance into the body; or (2) have an alcohol concentration of 0.08
or more.  See Tex. Penal Code Ann. § 49.01(2)(A),
(B) (West 2003).  Damon challenges the
sufficiency of the evidence to show that she operated a motor vehicle while
intoxicated and that she caused Kimbro’s death.

A.      Standard of Review

          This court
reviews sufficiency-of-the-evidence challenges applying the standard of review
enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781,
2789 (1979).  See Ervin v. State, 331 S.W.3d 49, 52–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref’d) (construing
holding of Brooks v. State, 323 S.W.3d 893, 912, 927–28 (Tex. Crim. App.
2010)).  Under this standard, evidence is
insufficient to support a conviction if, considering all the record evidence in
the light most favorable to the verdict, no rational factfinder could have
found that each essential element of the charged offense was proven beyond a
reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789;
Laster v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold
evidence to be insufficient under the Jackson standard in two circumstances:
(1) the record contains no evidence, or merely a “modicum” of evidence,
probative of an element of the offense, or (2) the evidence conclusively
establishes a reasonable doubt.  See Jackson, 443 U.S. at 314, 320,
99 S. Ct. at 2786, 2789; see also Laster, 275 S.W.3d at 518; Williams,
235 S.W.3d at 750.  

The sufficiency-of-the-evidence
standard gives full play to the responsibility of the factfinder to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007); see also Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating jury is sole judge of
credibility of witnesses and weight to give their testimony).  An
appellate court presumes that the factfinder resolved any conflicts in the
evidence in favor of the verdict and defers to that resolution, provided that
the resolution is rational.  See Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; see also Clayton, 235 S.W.3d at 778 (reviewing court
must “presume that the factfinder resolved the conflicts in favor of the
prosecution and therefore defer to that determination”).

          In viewing
the record, direct and circumstantial evidence are treated equally;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor, and circumstantial evidence alone can be sufficient to
establish guilt.  Clayton, 235 S.W.3d at 778.  In
determining the sufficiency of the evidence, a reviewing court examines “whether the necessary inferences are reasonable based upon the
combined and cumulative force of all the evidence when viewed in the light most
favorable to the verdict.”   Id. (quoting Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).  Finally, the “cumulative force” of all
the circumstantial evidence can be sufficient for a jury to find the accused
guilty beyond a reasonable doubt, even if every fact does not “point directly
and independently to the guilt of the accused.”  See Powell v. State,
194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

B.      Sufficiency
of the evidence of intoxication

          Damon challenges the sufficiency of
the evidence to show that she operated a vehicle while intoxicated.  Damon was charged with intoxication based on her
lack of “the normal use of her mental and physical faculties by reason of” alcohol,
a controlled substance, or a combination of alcohol and a controlled
substance.  She was also charged with
intoxication by having a blood alcohol concentration of at least 0.08.  The trial court, however, did not instruct
the jury that Damon could be found guilty based on a blood alcohol
concentration of 0.08 or greater.  Rather,
the trial court only instructed the jury that “‘Intoxicated’ means not having
the normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two
or more of those substances, or any other substance into the body.”

          Damon contends that the evidence is
insufficient to support a finding that she was intoxicated at the time of the
accident.  She argues that the first
evidence of her intoxication was approximately an hour and 20 minutes after the
accident, when Sergeant Cotter smelled the odor of alcohol coming from Damon.  The State was required to prove a “temporal
link” between her driving and her intoxication. 
See Kuciemba v. State, 310
S.W.3d 460, 462 (Tex. Crim. App. 2010). 
Damon relies on the Fourteenth Court of Appeals decision in Scillitani v. State, 297 S.W.3d 498
(Tex. App.—Houston [14th Dist.] 2009), reversed,
315 S.W.3d 542 (Tex. Crim. App. 2010) (per curiam), to support her argument
that the evidence is legally insufficient to support the temporal link.  

          In Scillitani,
an officer was dispatched to a single-vehicle accident.  Scillitani,
297 S.W.3d at 499.  No evidence showed
how much time elapsed between the accident and the officer’s arrival.  Id.  When the officer arrived, the defendant’s
mother and two tow truck drivers were already there.  Id.  The vehicle was in a ditch and the defendant,
who admitted to driving the vehicle, told the officer he did not know how he
lost control of his vehicle.  Id. 
Because the officer smelled alcohol on the defendant’s breath, the
officer performed field sobriety tests.  Id. 
The defendant displayed six of six clues on the HGN, two of eight clues
on the walk-and-turn test, and no clues on the one-leg stand.  Id.  A preliminary breath test also indicated the
presence of alcohol.  Id. 
The defendant was arrested and convicted for driving while
intoxicated.  Id.  On appeal, the court of appeals
held that the State was required to present independent evidence of “(1) how
recently the vehicle was driven or (2) how much time elapsed between the
accident and the arrival of law enforcement authorities.”  Id.
at 500.  The court emphasized, “If law
enforcement officers do not observe an accused operating a motor vehicle,
evidence that the accused was intoxicated when law enforcement officers arrived
on the scene, alone, does not establish that the accused was intoxicated at the
prohibited time—while the accused was operating a motor vehicle in a public
place.”  Id. 

          The Court of Criminal Appeals,
however, remanded Scillitani for
further review in light of its decision in Kuciemba
v. State.  Scillitani, 315 S.W.3d at 542 (citing Kuciemba v. State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010)).  In Kuciemba,
an officer was dispatched to a single-vehicle accident.  Kuciemba,
310 S.W.3d at 461.  No evidence
established how soon after the accident the officer arrived.  Id.  The officer found a truck sitting upright in
a ditch but with a partially crushed roof, indicating it had rolled over.  Id.  The officer saw the defendant slide from
behind the wheel across the center console and exit the passenger side of the
truck.  Id.  The defendant had blood
running down his face from small cuts on his forehead.  Id.  The officer immediately noticed a strong odor
of alcohol on the defendant’s breath and that he had “glassy and bloodshot
eyes,” slurred speech, and difficulty standing. 
Id.  Approximately 3 minutes later, paramedics
arrived at the scene and, while treating the defendant, took a blood
sample.  Id.  Test results indicated that
the defendant’s blood alcohol concentration was .214.  Id.  

On appeal, the court of appeals, as it did in Scillitani, stated there must be
independent evidence of “(1) how recently the vehicle was driven or (2) how
much time elapsed between the accident and the arrival of law enforcement
authorities.”  Kuciemba v. State, No. 14-08-00050-CV, 2009 WL 585978, at *2 (Tex.
App.—Houston [14th Dist.] Mar. 10, 2009), reversed,
310 S.W.3d 460 (Tex. Crim. App. 2010). 
Like in Scillitani, the court
of appeals also stated that the defendant’s intoxication at the scene of the
accident did not, standing alone, establish that he was driving while
intoxicated.  Id.  

In reversing, the Court of Criminal Appeals recognized that
the State must prove the “temporal link” between an accused’s intoxication and
driving but emphasized that this link may be established by circumstantial
evidence.  Kuciemba, 310 S.W.3d at 462. 
Moreover, the mere fact that the driver was “intoxicated at the scene of
a traffic accident . . . is some circumstantial evidence that the actor’s
intoxication caused the accident . . . .”  Id.
 Additionally, the driver’s actions that
cause the accident can be circumstantial evidence that the driver found
intoxicated at the scene was intoxicated at the time of the accident.  See id.
at 463.  For example in Kuciemba, the “driver’s failure to brake
provides some evidence the accident was caused by intoxication.”  Id.  The Court also noted that the driver’s presence
behind the wheel and the fact that he was still bleeding when the officer
arrived “support an inference that the accident had occurred a short time
previously.”  Id.  Finally, the Court
stated that the high blood alcohol concentration in a sample taken at the scene
“supports an inference either that appellant was recently involved in the
accident or that he had been intoxicated for quite a while.”  Id.  The Court concluded that the “combination of
these facts is sufficient to support appellant’s conviction for driving while
intoxicated.”  Id.  

          The Court of
Criminal Appeals also cited with approval a case from the Nebraska Supreme Court
that it found instructive due to its similar facts.  Id.
at 463 n.9 (citing State v. Blackman, 580 N.W.2d 550, 551
(Neb. 1998)).  The pertinent facts the
court recounted from Blackman were
that:

•        
An officer arrived on the scene 15–20 minutes
after being informed of a motorcycle in a ditch.

 

•        
The officer observed Blackman lying in the ditch
next to his motorcycle.

 

•        
Blackman admitted to the officer that he had
been operating the motorcycle on the public road immediately before losing
control and landing in the ditch.

 

•        
The officer “almost immediately” observed symptoms
of intoxication.

 

•        
The record contained no evidence of “other
persons, liquor, or liquor containers” in the area near Blackman.

 

•        
The record contained no “other evidence which
would support an inference that Blackman had the means or the opportunity of ingesting
alcohol from the time he lost control of the motorcycle until the officer found
him lying beside it in the ditch.”

 

Id. (citing Blackman, 580 N.W.2d at 551). The
Nebraska Supreme Court concluded that, from these facts, “it can reasonably be
inferred that the deputy found Blackman where he had come to rest after losing
control of his motorcycle and that Blackman’s state of intoxication at that
time existed when he last operated the motorcycle on the county road.”  Following precedent identical to that in
Texas, the court observed that the State’s burden did not include disproving
every hypothesis other than guilt.  Blackman, 580 N.W.2d at 551.

Some of the circumstantial evidence present in Kuciemba and Blackman is not present in this case.  Most significantly, unlike those two cases,
the officers did not immediately notice any signs of intoxication upon arriving
at the scene.  There were also wine
bottles at the scene close to Damon’s location immediately after the
accident.  Thus, some evidence supports
an inference that Damon had the means and opportunity to ingest alcohol after
the accident and before Cotter first noticed the smell of alcohol.  

Based on this evidence, Damon contends that the State
did not negate the possibility that Damon could have ingested alcohol between
the time of the accident and the time that Cotter first observed the smell of
alcohol.  More specifically, she argues
that “it would have been easy for the State to have elicited from any of the
witnesses who were present at the scene, and who presumably observed [Damon] in
the [time before] Cotter finally evaluating [Damon] as intoxicated, whether any
of them ever saw [Damon] ingest alcohol or medication.”    The State, however, did not have the burden
to exclude every reasonable hypothesis other than her guilt.  Geesa v. State, 820 S.W.2d 154, 159–61 (Tex. Crim. App. 1991), overruled in
part on other grounds, Paulson v. State, 28 S.W.3d 570 (Tex. Crim. App. 2000).  Before Geesa,
in a circumstantial evidence case, the State had to exclude all reasonable
hypotheses, other than the defendant’s guilt, in order for the evidence to be
found sufficient on appeal.  Carlsen
v. State, 654 S.W.2d 444,
447 (Tex. Crim. App. 1983), overruled by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991).  That is no longer the
State’s burden.

Although the jury could have
inferred from the evidence that Damon consumed alcohol from the open wine
bottles after the accident, no evidence required the jury to draw such an
inference.  From the existence of the empty wine bottles, the jury could
have reasonably inferred that she had been drinking before or while
driving.  The jury could have likewise inferred from the small size of the
bottles that Damon could have consumed the wine readily while driving. 
The State did not owe an obligation to exclude Damon’s reasonable hypotheses
that she drank from these bottles after the accident, despite her denial that
she had consumed any alcohol at all.  See
Geesa, 820 S.W.2d at 161.   

From moments after the accident
until Cotter first noticed the smell of alcohol on her, Damon was observed by
and within sight of numerous people.  The
presence of these witnesses from moments after the accident is stronger
circumstantial evidence of a temporal link than existed in Kuciemba and Blackman,
because in this case virtually no post-accident time gap existed in which the
driver was not around other witnesses. 
While there were small bottles of wine, they were discovered within the
vehicle itself, which was heavily damaged, overturned and had glass around
it.  A jury could rationally believe it
was unlikely that Damon either (1) consumed them in her vehicle quickly after
the accident in the moments while her vehicle was turned upside down and before
Trant saw her or (2) surreptitiously climbed back into her damaged vehicle to
retrieve those bottles and drink from them around witnesses.  Although the evidence did not address every
minute between the accident and Cotter’s first observation of signs of
intoxication, a jury could have reasonably inferred that Damon would not have
attempted to drink around the watchful eye of so many witnesses.   The jury could have also found otherwise,
but because the State does not have the burden to disprove the hypothesis that
Damon drank after the accident, we defer to the jury who resolved this issue
against Damon.  See Jackson, 443
U.S. at 326, 99 S. Ct. at 2793 (noting that appellate court presumes conflicts
in evidence resolved in favor of verdict as long as resolution is rational); Evans v. State, 202 S.W.3d 158, 164 n.19
(Tex. Crim. App. 2010) (stating that jury determinations “trump both trial and
appellate judges”); Wooten v. State, 267 S.W.3d 289,
294 (Tex. App.—Houston [14th Dist.] 2008, pet. ref’d) (noting that
issue is not whether appellate court “believe[s] the State’s evidence or believe[s] that appellant’s evidence outweighs the State’s evidence”).  When the record supports conflicting inferences, a reviewing
court must “presume that the factfinder resolved the conflicts in favor of the
prosecution and therefore defer to that determination.”  Clayton, 235 S.W.3d at 778.

Viewing the circumstantial evidence of this case in the light most favorable to the
verdict, including presuming that the jury resolved any conflicts in favor of the
verdict, the evidence supports the finding that Damon was intoxicated at the
time of the accident.  First, empty
alcohol containers were discovered in her vehicle shortly after the
accident.  While officers did not notice
any smell of alcohol on Damon while initially talking with her, it was windy at
the time, and the smell was noticed when Cotter approached her to take her
statement and when she was in the patrol vehicle.  Her speech was not slurred at that time, but
also was not slurred later when her blood alcohol level was 0.10.

          Second, she was observed by Cotter to
be intoxicated at the accident scene.   See Henderson
v. State, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d.)
(“The testimony of a police officer that an individual is intoxicated is
probative evidence of intoxication.”).  As
stated in Kuciemba, “Being
intoxicated at the scene of the accident in which the actor was the driver is
some circumstantial evidence that the driver’s intoxication caused the accident . . . .”  Kuciemba,
310 S.W.3d at 462.  Additionally, the
record does not show that she was observed consuming any alcohol after the
accident, and she was around a group of witnesses between the time of the
accident and when Cotter first observed signs of intoxication.  Trant arrived moments after the
accident.  In addition, at least one
other witness, at least one tow truck driver, and numerous Sheriff’s
Office,
fire department, and EMS personnel were at the scene from shortly after the
accident until Cotter noticed the smell of alcohol coming from Damon.  Specifically, Bloomfield arrived
approximately 23 minutes after the accident, at 5:38.[2]  By approximately 6:05, Cotter and Lillibridge
were speaking with Damon, although the record does not show the length of this
conversation.  After Lillibridge finished
speaking with Damon and turned to other aspects of the investigation, he
continued to check on her periodically. 
By approximately 6:30, Cotter returned to speak with Damon and noticed
the smell of alcohol.  Two officers
testified that they continued to observe Damon during the investigation.  Indeed, Cotter testified that Damon was within
her sight “at all times” between her arrival on the scene and when she first
smelled alcohol on her.  Neither
Lillibridge nor Cotter testified that they saw her consume any alcohol.  Lillibridge testified that, during an investigation,
officers ensure that drivers cannot consume any alcohol.  Cotter testified that Damon did not have the
opportunity to ingest alcohol because she was being observed by many witnesses
at the scene who would have reported it.  No alcohol or central nervous system
depressants were found on her or in her handbag, although other medication was
in her handbag.

Damon’s demeanor and actions at the scene are further circumstantial
evidence in support of a finding of intoxication shortly after the
accident.  Trant described her as rude and
uncaring about the injuries to the individuals in the Sunfire immediately after
the accident and before the police officers arrived.  There was also evidence from which the jury
could have reasonably concluded that she was mentally impaired at the time of
the accident; around 6:15 she could not explain to Lillibridge why she had
exited for Miller Road 2, when she was going to a friend’s house on Miller Road
3.  While her explanation occurred at
6:15, her driving on the wrong road occurred at the time of the accident.
Finally, the jury could have considered her repeated claim at the scene that
she had not had any alcohol, which subsequent tests proved contadicted.  She did not claim to the officers that she had
not been drinking before the accident but had drunk after the accident; she
categorically denied any consumption of alcohol.  Despite that denial, she refused a
breathalyzer.  Her refusal was admissible
into evidence and is a circumstance from which the jury could rationally infer
a consciousness of guilt.  See Tex.
Transp. Code Ann. § 724.061 (West 2011); Bartlett v. State, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008). 

Damon’s operation of her vehicle was additional
circumstantial evidence of intoxication. 
She was speeding and ran through an intersection marked with two stop
signs and a stop line.  The “black box”
showed that Damon did not attempt to brake or take any other evasive action to
avoid the collision.  However, Damon
repeatedly claimed to Lillibridge and Cotter that she did not run the stop
sign.  This evidence, taken together, is further
proof that Damon was intoxicated at the time she was driving her vehicle in a
public place.  See Kuciemba, 310 S.W.3d at 463 (“[A] driver’s failure to brake
provides some evidence the accident was caused by intoxication.”).  

Finally, the blood test results support an inference that
she “had been intoxicated quite a while.” 
Kuciemba, 310 S.W.3d at 463; see also Stewart v. State, 129 S.W.3d
93, 96 (Tex. Crim. App. 2004) (evidence of breath test taken hour and 20
minutes after appellant drove relevant to and some evidence of issue of whether
she was intoxicated at time of driving). 
Damon argues that the results are not admissible, an issue we discuss
below, but in a sufficiency determination, a reviewing court reviews all the
evidence from the trial court, admissible and inadmissible.  Clayton, 235 S.W.3d at 778; Powell, 194 S.W.3d at 507.  A
jury could reasonably disbelieve that Damon stealthily ingested sufficient
alcohol after the accident to reach a blood alcohol concentration of 0.10 while
surrounded by witnesses.  See Stephenson v. State, No. 01-96-01114-CR,
1997 WL 751109, at *8 (Tex. App.—Houston [1st Dist.] Dec. 4, 1997, pet. ref’d)
(mem. op., not designated for publication) (holding that evidence was
sufficient that appellant was intoxicated at time of accident in part because a
witness observed the accident and the driver after the accident and did not
notice him consuming alcohol after the accident).  

          In
conclusion, the cumulative force of circumstantial evidence can be, and here
was, sufficient to find the accused guilty beyond a reasonable doubt.  See
Powell, 194 S.W.3d at 507.  The
evidence showed:

• Damon had taken the wrong exit to get to her friend’s
house and could not explain why.

 

• She was speeding and failed to stop for a stop sign.

 

• She did not brake or attempt to avoid the accident.

 

• She falsely told officers she had stopped for the stop
sign.

 

• Three empty bottles of alcohol and one full bottle were
in her vehicle.

 

• Damon was at the scene among numerous police officers
and other people who were observing her. 
No one testified that they saw her drinking.

 

• Her vehicle was badly damaged and upside down in the
middle of the road.

 

• When Damon was first in an area that was not windy and
Cotter approached her more closely, Cotter observed the smell of alcohol.

 

• When Sergeant Cotter noticed the odor of alcohol, Damon
falsely denied drinking anything.

 

• Damon failed sobriety tests at the scene.

 

• She refused a breathalyzer.

 

• Blood test results showed alcohol and central nervous
system depressants in Damon’s blood.

 

While a rational juror might not infer guilt from these
circumstances, a rational juror could. 
Thus, we cannot say that there was no evidence of guilt or that a reasonable
doubt existed as a matter of law. 
Therefore, the evidence was sufficient, and we overrule this portion of
Damon’s first and second issues.

C.      Sufficiency
of the evidence of causation

          Within this portion of her first and
second issue, Damon contends “the State failed to present sufficient evidence
from which a rational juror could have concluded beyond a reasonable doubt that
[Damon’s] intoxication was responsible for the death of complainants.”  The next sentence of her brief states, “This
conclusion is fortified by the following evidence,” after which, Damon lists a
number of factors, including the embankment blocking her line of sight, the
obscured stop sign, and her expert’s testimony that the accident was
unavoidable.  This ignores the proper
standard of review, which requires this Court to consider all the
evidence in the light most favorable to the verdict.  See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  

          Viewing the
evidence in the light most favorable to the verdict, Damon was driving 12 miles
over the posted speed limit and ignored a stop sign and a stop line.  She failed to brake or take any other action
to avoid the accident.  The accident
severely injured Kimbro, who died as a result of her injuries.  This is legally sufficient evidence to
support a finding that Damon’s driving while intoxicated caused the death of
the complainant.  See Kuciemba, 310 S.W.3d at 463 (stating that driver’s failure to brake
is some evidence the accident was caused by driver’s intoxication); Hale v. State, 194 S.W.3d 39, 43 (Tex.
App.—Texarkana 2006, no pet.) (holding evidence of causation sufficient in
intoxication manslaughter case where appellant was intoxicated, driving at high
rate of speed, drove over hill where vehicles were either parked in road or
moving very slowly, and collided with vehicle despite having four-tenths of a
mile to stop or avoid collision).[3]  

          We overrule this portion of Damon’s
first and second issues.

Relevance of Blood Test
Evidence and Rule 403

          In her third issue, Damon contends
that the trial court erred by overruling her objection to the relevance of the
evidence concerning the results of her blood tests.  In her fourth issue, Damon contends that the
trial court erred by admitting the blood tests because the probative value of
the evidence was substantially outweighed by the risk of unfair prejudice.


A.      Standard of review

          We review a trial court’s ruling on a
challenge to the admission of evidence, including a motion
to suppress, for abuse of discretion.  Amador v. State, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).  “In other words, the trial court’s ruling will
be upheld if it is reasonably supported by the record and is correct under any
theory of law applicable to the case.”  Id.
at 878–79.  In considering whether the
record reasonably supports a trial court’s determination, we view the evidence
in the light most favorable to the trial court’s determination.  State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App.
2008).

          We
give almost complete deference to a trial court’s determination of a question
of historical fact if it is supported by the record.  Id.  Similarly, we give almost complete deference
to a trial court’s determination of a mixed question of law and fact that turns
on an evaluation of credibility and demeanor if that determination is supported
by the record.  Crain v. State, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).  However, we review de novo questions of law
and mixed questions of law and fact that do not turn on an evaluation of credibility
and demeanor.  Garcia-Cantu, 253 S.W.3d at 241.  When the trial court does not make explicit
factual findings in support of its ruling, we will imply that it made all  findings necessary to uphold the ruling if
such findings are supported by the record evidence, viewed in the light most
favorable to the ruling.  Id.

B.      Rule 401

          In her third
issue, Damon asserts that the result of the blood test should have been
excluded because the State could not rule out the possibility that she had consumed
alcohol after the accident but before the test and, therefore, the blood test
result was not relevant.

          Evidence is
relevant if it has a tendency to make existence of a fact that is of
consequence to determination of the action more probable or less probable.  Tex. R. Evid. 401; Layton v. State, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009).  “Evidence which is not relevant
is inadmissible.”  Tex. R. Evid. 402.  “Evidence need not by itself prove or disprove a particular
fact to be relevant; it is sufficient if the evidence provides a small nudge
toward proving or disproving some fact of consequence.”  Stewart
v. State, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).  In determining whether evidence is relevant, courts should
examine the purpose for which the evidence is being introduced.  Layton,
280 S.W.3d at 240.  “It is critical that
there is a direct or logical connection between the actual evidence and the
proposition sought to be proved.”  Id.  

          The proposition for which the State
introduced the evidence was to show that Damon had ingested alcohol or other
substances that would impair her normal mental or physical faculties.  The result of the blood test makes this fact
of consequence more probable.  Damon’s
specific argument is that because of the lapse of over an hour from the time of
the accident until Cotter noticed a smell of alcohol on her, it is possible
that she ingested alcohol or medication after the accident.  

In Verbois v. State,
the court of appeals held that results of a breath test taken two and one half
hours after the accident were relevant.  909
S.W.2d 140, 142 (Tex. App.—Houston [14th Dist.] 1995, no pet.).  The court noted that, although the results
“could not be extrapolated back to accurately measure intoxication at the time
of the accident,” they were “relevant in establishing that appellant had
consumed alcohol prior to the incident because he had no opportunity to take in
any alcohol after the accident.”  Id. 
Damon attempts to distinguish Verbois
by arguing that the evidence does not show that she, unlike the defendant
in Verbois, had “no opportunity to
take in any alcohol after the accident.” 
But, as discussed earlier, the circumstantial evidence supports an
inference that Damon did not have a realistic opportunity to consume alcohol
after the accident.  Moreover, that the
blood tests result “might not have been conclusive proof that [Damon] was
intoxicated at the time she drove . . . is of no consequence.”  See
Stewart, 129 S.W.3d at 96.  The result of the blood test is still
circumstantial evidence that, coupled with the other evidence in this case, is
a “piece[] in the evidentiary puzzle for the jury to consider in
determining whether [Damon] was intoxicated at the time she drove.”  See id.
129 S.W.3d at 97 (holding evidence of breath test taken hour and 20 minutes
after defendant drove relevant to and some evidence of issue of whether
appellant was intoxicated at time she drove). 


Additionally, the evidence
impeaches Damon’s statements to the officers that she had not been
drinking.  The blood test results contradicted
her statement, which was not limited in time. 


          We overrule
Damon’s third issue.

C.
     Rule 403

          In her fourth
issue, Damon contends that the admission of the blood test result was unfairly
prejudicial under Rule 403 of the Texas Rules of Evidence.

          Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice. 
Tex. R.
Evid. 403.  “Under Rule
403, it is presumed that the probative value of relevant evidence exceeds any
danger of unfair prejudice. The rule envisions exclusion of evidence only when
there is a ‘clear disparity between the degree of prejudice of the offered
evidence and its probative value.’” Hammer v. State, 296 S.W.3d 555, 568 (Tex.
Crim. App. 2009) (citations omitted).  It
is the burden of the party objecting under Rule 403 to show that the probative
value is substantially outweighed by the danger of unfair prejudice.  Runnels v. State, 193 S.W.3d 105, 107 (Tex.
App.—Houston
[1st Dist.] 2006, no pet.).

          A Rule 403 analysis  requires a court to balance (1) the probative
force of the proffered item of evidence along with (2) the proponent’s need for
that evidence against (3) any tendency of the evidence to suggest a decision on
an improper basis, (4) any tendency of the evidence to confuse or distract the
jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time
or merely repeat evidence already admitted. 
Gigliobianco v. State, 210 S.W.3d 637,
641–42 (Tex. Crim. App. 2006).  

          Great
deference is given to the trial court’s decision to admit or exclude evidence
under Rule 403.  The Court of Criminal
Appeals has 

repeatedly explained that Rule 403’s “use of the word ‘may’
reflects the draftsman’s intent ‘that the trial judge be given a very
substantial discretion in “balancing” probative value on the one hand and “unfair
prejudice” on the other, and that he should not be reversed simply because an
appellate court believes that it would have decided the matter otherwise.”’

 

Powell v. State,
189 S.W.3d 285, 288 (Tex. Crim. App. 2006). 
The court added, “We have emphasized that the trial judge, not the
appellate judge, is in the best position to assess the extent of the prejudice
caused a party by a piece of evidence. 
We have also stated that if judicial self-restraint is ever desirable,
it is when a Rule 403 analysis of a trial court is reviewed by an appellate
tribunal.”  Id. at 289 (quoting United
States v. Cruz,         326 F.3d 392,
396 (3d Cir. 2003)); see also Winegarner v. State, 235 S.W.3d 787, 791 (Tex.  Crim. App. 2007)
(stating that Rule 403 grants trial courts “considerable latitude” and “allows
different trial judges to reach different conclusions in different trials on
substantially similar facts without abuse of discretion”); Montgomery
v. State, 810 S.W.2d 372, 378, 392 (Tex. Crim. App. 1990) (stating that
appellate deference to Rule 403 determination “is a rule of judicial restraint,
intended . . . to avoid the anomaly of having appellate courts usurp a function
that the system assigns to the trial courts” and grants trial judges
“considerable freedom in evaluating proffered evidence’s probative value in
relation to its prejudicial effect”); Rodda
v. State, 745 S.W.2d 415, 419 (Tex. App.—Houston [14th Dist.] 1988, pet.
ref’d) (“The trial judge, not the appellate judge, is in the best position to
assess the extent of the prejudice caused a party by a piece of evidence. The
appellate judge works with a cold record, whereas the trial judge is there in
the courtroom.”) (quoting United States
v. Long, 574 F.2d 761, 767 (3d Cir. 1978)). 
Under the abuse of discretion standard, we will not overrule a trial
court’s decision under Rule 403 if the trial court’s decision is “within the
zone of reasonable disagreement.”  Montgomery, 810 S.W.2d at 391.




 

          1.       Probative
value

          This factor
“looks to the evidence’s probativeness or how compellingly the evidence serves
to make a fact of consequence more or less probable.”  State
v. Mechler, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005).  In Mechler,
the Court of Criminal Appeals held that the result of a breath test taken
almost an hour and a half after Mechler was arrested was probative because the
result “indicated that Mechler had consumed alcohol” and therefore “tend[ed] to
make it more probable that he was intoxicated at the time of driving . . . .”  Id.  Therefore, the Court of Criminal Appeals
found this factor weighed in favor of admissibility.  Id.;
see also Gigliobianco, 210
S.W.3d at 642.  This factor is
particularly probative here, where Damon denied consuming any alcohol.  Additionally, at that point in the trial, the
issue of whether Damon was intoxicated per se by reason of having a blood
alcohol concentration of over .08 was still part of the case.  Certainly, the blood test results were
probative on that issue.  See Kirsch v. State, 306 S.W.3d
738, 746 (Tex. Crim. App. 2010) (blood test results taken 80 minutes after
accident probative of per se intoxication even without extrapolation evidence).  In this case, this factor weighs in favor of admissibility.

          2.       Need
for the evidence

          This factor
includes a consideration of “whether the proponent has other evidence
establishing this fact and whether this fact is related to a disputed
issue.”  Mechler, 153 S.W.3d at 441.  In
Mechler, the Court of Criminal
Appeals held that this factor weighed in favor of excluding the testimony
because the State had other evidence of Mechler’s intoxication.  Id.
at 441–42.  The arresting officer
testified that Mechler rolled through a stop sign and was driving erratically;
Mechler’s breath smelled of alcohol when the officer approached his car;
Mechler failed the field sobriety tests; and Mechler admitted to drinking “[a]
little” alcohol.  Id. at 441.  Here, there was
similar evidence, except that Damon denied drinking alcohol.  The absence of this admission, as well as the
eyewitnesses who did not observe any signs of intoxication shortly after the
accident makes this factor a close call. 
Although the State had other evidence of Damon’s intoxication, this was
the only direct evidence establishing she had introduced alcohol in to her
system.  And, as noted above, the
evidence related directly to an element of the charged offense.  We conclude this factor weighs neither for
nor against excluding or admitting the evidence. 

          3.       Unfair
prejudice

          This factor
looks to whether the evidence has the potential to impress the jury in some
irrational but indelible way.  Id. at 440.  However, Rule 403 does not exclude all
prejudicial evidence, only “unfairly” prejudicial evidence.  Id.  “‘Unfair prejudice’ refers only to relevant
evidence’s tendency to tempt the jury into finding guilt on grounds apart from
proof of the offense charged.”  Id. 
As discussed above, the blood test result was relevant and probative of whether
Damon drove while intoxicated, which is an element of the offense charged.  Therefore, the evidence is not unfairly
prejudicial because it relates directly to the offense charged.  See id.
at 440–41.  We conclude that this factor
weighs in favor of admissibility.

          4.       Confusion
of the issues

          “Because the
[blood test] results relate[d] directly to the charged offense, [the] jury
could not [have been] distracted away from the charged offense regardless of
the time required to present the results.” 
Id. at 441.  This factor weighs in favor of admissibility.

          5.       Misleading
the jury

          In Gigliobianco, the Court of Criminal
Appeals held that the trial court could have reasonably concluded that the test
results in that case, taken approximately 80 minutes after driving, would not
have any tendency to be given undue weight by the jury because the witness
through whom the results were introduced expressly testified that the results
could not, by themselves, show appellant was intoxicated at the time of driving.  Gigliobianco, 210 S.W.3d at 642.  Here, the State’s witness did not offer the
same type of clarification to the jury. 
Thus, this factor weighs in favor of exclusion.




 

6.       Undue
delay and needless presentation of cumulative evidence

 

          The trial
court could have reasonably concluded that there would be no undue delay or
presentation of cumulative evidence.  See id.

          In Mechler, the Court of Criminal Appeals
noted that because the evidence related directly to the charged offense, “a
jury could not be distracted away from the charged offense regardless of the
time required to present the results.”  Mechler, 153 S.W.3d at 441.  We also note that the time to develop the
evidence was relatively short.  The State
called the technician who analyzed the blood and a toxicologist who interpreted
the results; the direct examination of these two witnesses by the State took
approximately 26 pages of the reporter’s record; the cross-examination,
re-direct and rebuttal testimony took an additional 18 pages.  We conclude that this factor weighs in favor
of admissibility.

          Weighing all
of the factors, we conclude that the trial court’s decision that the probative
value was not substantially outweighed by any of the countervailing factors in
Rule 403 is, at worst, in the zone of reasonable disagreement.  Accordingly, we cannot conclude, given the
deference and judicial restraint we must apply in reviewing a Rule 403
determination, that the trial court abused its discretion by admitting the
blood test results.  See Gigliobianco, 210
S.W.3d at 642; Mechler, 153 S.W.3d at 442;
see also Powell, 189 S.W.3d at 289.

          We overrule Damon’s
fourth issue.

Jury Instruction Concerning
Concurrent Causation

          In her fifth
issue, Damon contends that the trial court erred by denying her proposed jury
charge on concurrent causation.

A.      Law concerning the jury charge

          The trial court must provide the jury
with “a written charge distinctly setting forth the law applicable to the case;
not expressing any opinion as to the weight of the evidence, not summing up the
testimony, discussing the facts or using any argument in his charge
calculated to arouse the sympathy or excite the passions of the jury.”  Tex. Code Crim. Proc. Ann. art. 36.14 (West
2007); Walters v. State,
247 S.W.3d 204, 208 (Tex. Crim. App. 2007).  The trial court is required to instruct the
jury on statutory defenses, affirmative defenses, and justifications whenever
they are raised by the evidence.  See Tex.
Penal Code Ann. §§ 2.03(d), 2.04(d) (West 2003); Walters, 247 S.W.3d at 208–09.  A defendant is entitled to an instruction on
every defensive issue raised by the evidence, regardless of whether the
evidence is strong, feeble, unimpeached, or contradicted, and even when the
trial court thinks the testimony is not worthy of belief.  Walters, 247 S.W.3d at 209.

          Parties are not, however, entitled to a special jury
instruction relating to a statutory offense or defense if that instruction (1)
is not grounded in the Texas Penal Code, (2) is covered by the general charge
to the jury, and (3) focuses the jury’s attention on a specific type of
evidence that may support an element of an offense or a defense.  Id. at 212 (relying on Giesberg v.
State, 984 S.W.2d 245, 250
(Tex. Crim. App. 1998)).  In such a case,
the non-statutory instruction would constitute a prohibited comment on the
weight of the evidence.  Id.  A
jury charge on a defense properly includes specific descriptions of the type of
evidence that may establish that defense only when the statutory defense
includes the specific descriptions.  See id. at 211–12.

B.      The
proposed jury charge

          Concerning causation, the Texas Penal Code
provides: 

A person is criminally responsible if the result would
not have occurred but for his conduct, operating either alone or concurrently
with another cause, unless the concurrent
cause was clearly sufficient to produce the result and the conduct of the actor
clearly insufficient.

 

Tex. Penal
Code Ann. § 6.04(a) (West 2003).  The charge given by the trial court tracks
the statutory language.  The charge
provides: 

A person is criminally responsible if the result would
not have occurred but for her conduct, operating either alone or concurrently
with another cause, unless the concurrent cause was clearly sufficient to
produce the result and the conduct of the defendant clearly insufficient.  If you find from the evidence beyond a
reasonable doubt that on the occasion, and at the time and place alleged in the
indictment, the defendant, Veronica Yvonne Damon, did, while intoxicated,
operate a motor vehicle, to wit, an automobile, and while so operating said
vehicle did disregard a stop sign and drive her motor vehicle into and cause it
to collide with a motor vehicle occupied by Doris Kimbro, but you further find
from the evidence, or if you have a reasonable doubt thereof, that concurrently
with said intoxication of defendant, if any, other cause or causes also
operated to cause the collision in question and the death of Doris Kimbro and
that such other cause or causes were clearly sufficient to cause the collision
in question and the death of Doris Kimbro, and the alleged operating of said motor
vehicle while intoxicated, if any such intoxication there was, was clearly
insufficient to produce the collision and cause the death of Doris Kimbro, then
you will find the defendant not guilty of intoxication manslaughter.

 

          Damon’s
proposed jury charge states:

If you find from the evidence beyond a reasonable doubt
that on the 21st day February, 2007, the defendant, Veronica Yvonne Damon, did,
while intoxicated, operate a motor vehicle, to wit, an automobile, and while so
operating said vehicle did collide with a motor vehicle occupied by Doris
Kimbro, but you further find from the evidence, or if you have a reasonable
doubt thereof, that concurrently with said intoxication of defendant, if
any, the other causes of: sun-glare, the effects of sun-glare upon the
shape of traffic control signage, the lack of appropriate traffic control
signage and the lack of an appropriate distance from the first line of sight to
oncoming traffic that would allow for an appropriate perception/reaction time, also
operated to cause the collision in question and the death of Doris Kimbro and
that such other cause or causes were clearly sufficient to cause the collision
in question and the death of Doris Kimbro, and the alleged operating of said
motor vehicle while intoxicated, if
any such intoxication there was, was clearly insufficient to
produce the collision and cause the death of Doris Kimbro, then you will find
the

defendant not guilty of intoxication manslaughter. 

 

Unless you so find from the evidence beyond a reasonable
doubt, or if you have a reasonable doubt thereof, you will acquit the defendant
of intoxication manslaughter and next consider whether the defendant is guilty
of the lesser offense of intoxication assault.

 

(emphasis added).  Damon’s proposed charge states that the
intoxication “if any” as a possible cause and then lists the other causes
without any conditional language.  This
requested instruction would focus the jury’s attention on specific evidence
that would support the defense.  Thus, it
is not a proper instruction under the third prong of Walters.[4]  See
Walters, 247 S.W.3d at 212.  Additionally, section 6.04(a) does not
identify specific types of evidence that establish the defense.  Therefore, a jury charge that lists specific
types of evidence is not proper.  See id. 
Accordingly, we hold that the trial court did not err by refusing
Damon’s proposed jury instruction.

          We overrule Damon’s fifth issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel consists of Justices
Higley, Brown, and Bennett.[5]

Do not publish.   Tex. R. App. P. 47.2(b).











[1]           See Tex. Penal Code Ann.
§ 49.08 (West Supp. 2010).





[2]           We note that Deputy Anderson arrived
sometime before Bloomfield did.  He spoke
with Damon and, after learning she was a driver involved in the accident, took
her driver’s license.  However, Deputy
Anderson did not testify, so the exact timeline is unknown.





[3]           Damon relies on the dissenting opinion
in Glauser v. State.  66 S.W.3d 307, 322–23 (Tex. App.—Houston [1st
Dist.] 2000, pet. ref’d) (O’Connor, J., dissenting).  However, this court’s holding was that the
evidence of causation in an intoxication manslaughter case was sufficient when
it showed that the appellant was intoxicated, was speeding, drove into the rear
of a disabled vehicle that had its headlights on and at least one taillight
showing, and never applied brakes.  Id. at 313.





[4]           In addition, some of the items
proposed by Damon, such as the sun glare, the shape of the stop signs, and the
visibility of the stop signs, were controverted.  Thus, a jury charge assuming the truth of
these controverted matters would constitute an erroneous comment on the weight
of the evidence.  See Krause v. State, 243
S.W.3d 95, 107 (Tex. App.—Houston [1st Dist.] 2007, pet ref’d).

   






[5]           The
Honorable Alfred H. Bennett of the 61st District Court, sitting by assignment.